**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  v.<br><br>TRIBUNE MEDIA COMPANY, PETER M. KERN,  BRUCE A. KARSH, CRAIG A. JACOBSON, ROSS LEVINSOHN, PETER E. MURPHY, LAURA R. WALKER, SINCLAIR BROADCAST GROUP, INC., and SAMSON MERGER SUB INC.,<br><br>   Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br><u>CLASS ACTION</u> |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on May 8, 2017 (the "Proposed Transaction"), pursuant to which Tribune Media Company ("Tribune" or the "Company") will be acquired by Sinclair Broadcast Group, Inc. ("Parent") and Samson Merger Sub Inc. ("Merger Sub," and together with Parent, "Sinclair").

2. On May 8, 2017, Tribune's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Sinclair. Pursuant to the terms of the Merger Agreement, shareholders of Tribune will receive $35.00 in cash and 0.2300 of a share of Class A common stock of Parent for each share of Tribune common stock.

3.      On July 3, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Tribune common stock.

9.      Defendant Tribune is a Delaware corporation and maintains its principal executive offices in Chicago, Illinois. The Company's common stock is traded on the NYSE under the ticker symbol "TRCO."

10. Defendant Peter M. Kern ("Kern") is a director of the Company and serves as Interim Chief Executive Officer ("CEO").

11. Defendant Bruce A. Karsh ("Karsh") is a director of the Company.

12. Defendant Craig A. Jacobson ("Jacobson") is a director of the Company.

13. Defendant Ross Levinsohn ("Levinsohn") is a director of the Company.

14. Defendant Peter E. Murphy ("Murphy") is a director of the Company.

15. Defendant Laura R. Walker ("Walker") is a director of the Company.

16. The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17. Defendant Parent is a Maryland corporation and a party to the Merger Agreement.

18. Defendant Merger Sub is a wholly-owned subsidiary of Parent and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Tribune (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of May 4, 2017, there were approximately 101,021,504 shares of Tribune Class A stock issued and 86,919,319 shares of Tribune Class A stock outstanding, as well as 5,605 shares of Tribune Class B stock issued and outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, (i)

whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

26.    Tribune is home to a diverse portfolio of television and digital properties driven by quality news, entertainment, and sports programming.

27.    The Company is comprised of Tribune Broadcasting's forty-two owned or operated local television stations reaching approximately 50 million households, national

entertainment cable network WGN America, whose reach is approximately 80 million households, Tribune Studios, and a variety of digital applications and websites commanding 60 million monthly unique visitors online.

28. The Company also includes Chicago's WGN-AM and the national multicast networks Antenna TV and THIS TV.

29. Additionally, the Company owns and manages a significant number of real estate properties across the United States and holds a variety of investments, including a 32% interest in CareerBuilder, LLC and a 31% interest in Television Food Network, G.P., which operates Food Network and Cooking Channel.

30. On March 1, 2017, Tribune issued a press release wherein it reported its results for the three months and year ended December 31, 2016. Consolidated operating revenues increased 11% to $529.6 million for the fourth quarter and increased 8% to $1,947.9 million for the full year. Consolidated operating profit increased 129% to $113.2 million for the fourth quarter and increased 261% to $433.6 million for the full year. Consolidated Adjusted EBITDA increased 38% to $181.5 million for the fourth quarter and increased 21% to $531.1 million for the full year. Total Television and Entertainment net advertising revenues (which includes political and digital revenues) increased 10% to $384.6 million for the fourth quarter and increased 5% to $1,374.6 million for the full year. Retransmission revenue increased 20% to $89.2 million for the fourth quarter and increased 18% to $334.7 million for the full year. Carriage fee revenue increased 35% to $30.7 million for the fourth quarter and increased 42% to $121.0 million for the full year. Additionally, digital ad revenue increased 7% to $18.9 million for the fourth quarter and increased 12% to $66.6 million for the full year. With respect to the results, former CEO Peter Liguori commented:

> Bolstered by record fourth quarter revenues, Tribune Media's financial results for 2016 were very strong[.] Consolidated revenues grew 8% and consolidated Adjusted EBITDA was up 21% over last year, driven by strong political advertising revenue and solid growth in retransmission and carriage fee revenues. These results are a clear demonstration that our operational strategies continue delivering value for our shareholders. In addition, last year's monetization of real estate assets for more than $500 million and the recent sale of Gracenote enables Tribune Media to be a more focused television company, uniquely positioned to take advantage of the opportunities presented by a rapidly changing media environment.

31. Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which Tribune will be acquired for inadequate consideration.

32. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

33. Further, the Company must promptly advise Sinclair of any proposals or inquiries received from other parties.

34. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Sinclair a "matching right" with respect to any "Superior Proposal" made to the Company.

35. Further locking up control of the Company in favor of Sinclair, the Merger Agreement provides for a "termination fee" of $135,500,000 payable by the Company to Sinclair if the Individual Defendants cause the Company to terminate the Merger Agreement.

36. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

37. Additionally, Oaktree Tribune, L.P. and OCM FIE, LLC, affiliates of Oaktree Capital Management (the "Oaktree Stockholders"), which collectively hold approximately 16.3% of the issued and outstanding shares of Tribune Class A stock, entered into a voting and support agreement with Sinclair, pursuant to which they have agreed to vote their shares in favor of the Proposed Transaction. Accordingly, such shares are already locked up in favor of the merger.

38. The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

39. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

40. The merger consideration also fails to adequately compensate the Company's stockholders for the significant synergies that will result from the merger.

41. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

42. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

43. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

44. First, the Registration Statement omits material information regarding Tribune's financial projections, Sinclair's financial projections, and the financial analyses performed by the Company's financial advisors, Moelis & Company ("Moelis") and Guggenheim Securities, LLC ("Guggenheim"), in support of their so-called fairness opinions.

45. With respect to Tribune's financial projections, the Registration Statement fails to disclose: income/loss from continuing operations; income taxes; investment transactions; interest and dividend income; interest expense; pension expense/credit; equity income/losses; depreciation; amortization; stock-based compensation; certain special items; non-operating items; gain/loss on sales of real estate; impairments and other non-cash charges; reorganization items; taxes; capital expenditures; changes in net working capital; the projections for the Company's national general entertainment cable network WGN America ("WGNA") and local broadcast television stations ("Tribune Local TV"); and a reconciliation of all non-GAAP to GAAP metrics.

46. The Registration Statement fails to disclose Sinclair's financial projections.

47. With respect to Moelis's *Discounted Cash Flow Analysis of Tribune*, the Registration Statement fails to disclose the range of estimated terminal values of Tribune.

48. With respect to Moelis's *Discounted Cash Flow Analysis of Sinclair*, the Registration Statement fails to disclose: (i) the financial forecasts provided by Sinclair's management for April 2017 through December 2020; (ii) the estimated future unlevered free cash flows projected to be generated by Sinclair and the constituent line items; and (iii) the range of estimated terminal values of Sinclair.

49. With respect to Guggenheim's *Tribune TV&E on a Combined Basis—Discounted Cash Flow Analyses*, the Registration Statement fails to disclose the estimate of

terminal/continuing value of Tribune's TV&E.

50. With respect to Guggenheim's *Tribune TV&E on a Sum-of-the-Parts Basis—Discounted Cash Flow Analyses*, the Registration Statement fails to disclose the estimate of terminal/continuing values of Tribune Local TV and WGNA.

51. With respect to Guggenheim's *Tribune's TVFN Stake—Dividend Discount Analyses*, the Registration Statement fails to disclose the estimate of terminal/continuing value of Tribune's TVFN Stake.

52. With respect to Guggenheim's *Sinclair—Discounted Cash Flow Analyses*, the Registration Statement fails to disclose: (i) the projected unlevered free cash flows for Sinclair and constituent line items; and (ii) the estimate of the terminal/continuing value of Sinclair.

53. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

54. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; (ii) "Tribune's Reasons for the Transaction and Recommendation of the Tribune Board"; (iii) "Opinions of Tribune's Financial Advisors"; and (iv) "Tribune Management's Unaudited Prospective Financial Information."

55. Second, the Registration Statement fails to disclose whether any confidentiality agreements executed by Tribune and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

56. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

57. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; and (ii) "Tribune's Reasons for the Transaction and Recommendation of the Tribune Board."

58. Third, the Registration Statement omits material information regarding potential conflicts of interest of Guggenheim.

59. Specifically, the Registration Statement fails to disclose the amount of compensation received by Guggenheim for the past services it provided to Tribune.

60. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

61. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; (ii) "Tribune's Reasons for the Transaction and Recommendation of the Tribune Board"; and (iii) "Opinions of Tribune's Financial Advisors."

62. Fourth, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

63. Specifically, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Tribune's officers and directors, including who participated in all such communications.

64. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

65. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; (ii) "Tribune's Reasons for the Transaction and Recommendation of the Tribune Board"; and (iii) "Interests of Tribune's Directors and Executive Officers in the Merger."

66. Fifth, the Registration Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

67. For example, the Registration Statement fails to disclose the terms and value of the indication of interest submitted by "Bidder C," as well as the nature of the "expressions of interest" as discussed at the January 24, 2017 Board meeting.

68. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Transaction"; and (ii) "Tribune's Reasons for the Transaction and Recommendation of the Tribune Board."

69. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Tribune's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Tribune**

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Tribune is liable as the issuer of these statements.

72. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

73. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

74. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and

accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

75. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

76. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

77. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Sinclair

78. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79. The Individual Defendants and Sinclair acted as controlling persons of Tribune within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Tribune and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

80. Each of the Individual Defendants and Sinclair was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

81. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

82. Sinclair also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

83. By virtue of the foregoing, the Individual Defendants and Sinclair violated Section 20(a) of the 1934 Act.

84. As set forth above, the Individual Defendants and Sinclair had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that

does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 12, 2017　　　　　　　　　　**RIGRODSKY & LONG, P.A.**

　　　　　　　　　　　　　　　　　By:　*/s/ Brian D. Long*
　　　　　　　　　　　　　　　　　　　　Brian D. Long (#4347)
　　　　　　　　　　　　　　　　　　　　Gina M. Serra (#5387)
　　　　　　　　　　　　　　　　　　　　2 Righter Parkway, Suite 120
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19803
　　　　　　　　　　　　　　　　　　　　Telephone: (302) 295-5310
　　　　　　　　　　　　　　　　　　　　Facsimile: (302) 654-7530
　　　　　　　　　　　　　　　　　　　　Email: bdl@rl-legal.com
　　　　　　　　　　　　　　　　　　　　Email: gms@rl-legal.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800